**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JOHNNY GROGAN**                                                      **PLAINTIFF**

**V.**                              **CIVIL ACTION NO. 3:15CV67 HTW-LRA**

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY**          **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Johnny Grogan appeals the final decision denying his application for supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

In 2012, Plaintiff filed an SSI application alleging a disability onset date of March 22, 2012, due to problems with his back, shoulders and left ankle. He has a general education developmental diploma (GED) and was approximately 49 years old at the time of filing, with previous work experience as a carpenter. Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease and osteoarthritis of the right shoulder and left ankle were medically severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff could not return to his past relevant work, but had the residual functional capacity to perform light work with the following additional limitations: "standing and/or walking is limited to forty-five minutes at a time or six hours total in an eight-hour workday; occasional climbing, stooping, kneeling, crouching, and crawling; occasional pushing/pulling; occasional overhead reaching with the right upper extremity; and, no exposure to hazardous machinery." Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a box office cashier, booth cashier, and information clerk.[2]

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 8, pp. 19-25.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the ALJ's decision should be reversed, or alternatively remanded, because the ALJ failed to properly weigh the medical source opinions of record in compliance with social security regulations and controlling Fifth Circuit authority.

Specifically, Plaintiff contends as his first point of error, that the ALJ erred in weighing the medical opinions of his primary treating physician, Dr. David Moody. At the administrative hearing Plaintiff testified that he was severely injured in a car accident in 1984, and now has limited use of his arms, shoulders, back, and right knee. At some

3

point thereafter, he also injured his ankle. Although he returned to work, Plaintiff testified that his pain increased in 2003. Since then, he has been unable to work on a consistent basis. As the sole regular treating source of record, Plaintiff argues that Dr. Moody is the only physician who can provide a detailed, longitudinal picture of his medical impairments and functional limitations.[3]

Generally, the opinion and diagnosis of a treating physician should be given considerable weight in determining disability. But the treating physician's rule is "not an ironclad rule." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). "[S]uch opinions can be disregarded if they are 'brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence.'" *Id.* (quoting *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005)).

In the present case, medical records document that Dr. Moody has conservatively treated Plaintiff for chronic back pain nearly every month since 2009. In June 2013, Dr. Moody completed a form entitled *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)*, in which he indicated that Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently; stand, walk, and sit for less than 2 hours; alternate sitting and standing every 30 minutes; and, walk for 30 minutes every 60 minutes. He also opined that Plaintiff would need to shift positions at will, but would not need to lie down at unpredictable intervals. Plaintiff could frequently stoop, but could only

---

[3]ECF No. 12, pp. 4-39.

occasionally perform other postural activities. His ability to reach (including overhead) and push and pull were also "affected," due to bilateral rotator cuff tears affecting mobility and strength in both shoulders. Dr. Moody further opined that Plaintiff should avoid even moderate exposure to cold temperatures, and that his impairments would cause him to miss work three times or more a month.[4]

In evaluating the evidence, the ALJ found that Dr. Moody's medical source statement was entitled to little weight because the limitations assigned therein were excessive compared to x-ray results, Plaintiff's subjective complaints, and examination findings throughout the medical record.

Plaintiff argues, however, that the ALJ was required to discuss the factors enumerated in 20 C.F.R. § 404.1527(c)(2) (2012), before assigning Dr. Moody's opinions little weight. These factors require that an ALJ consider the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the physician's opinion; the consistency of the opinion with the record as a whole; the specialization of the source; and, any other factors tending to support or contradict the physician's opinion. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views" using these factors. *Newton v. Apfel*, 209 F.3d

---

[4] ECF No. 8, pp. 324-28.

448, 453 (5th Cir. 2000) (emphasis in original).  However, social security regulations require only that the ALJ consider the *Newton* factors.  "Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form."  *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F. Supp. 2d 601, 608 (E.D. Tex. 2005).  Further, the ALJ need not consider each of these factors when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

Because the record is replete with reliable medical evidence controverting Dr. Moody's opinions in this case, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions.  However, a careful review of the ALJ's decision reveals she considered the *Newton* factors in assigning Dr. Moody's opinions little weight.

Although the ALJ did not delineate the length or frequency of Dr. Moody's treatment, she discussed medical records showing that Plaintiff sought treatment for back pain at Dr. Moody's clinic in 2012, 2013, and 2014.  She acknowledged Dr. Moody as Plaintiff's primary care provider, and examined the conservative nature and extent of his treatment history.[5]  In accordance with *Newton*, the ALJ also discussed the limitations Dr.

---

[5] Plaintiff accurately notes, however, that in doing so, the ALJ erroneously suggested that clinic records indicated that he was primarily seen by a nurse practitioner.  Dr. Moody later clarified in a letter to the Appeals Council that he, in fact, was the only provider to treat Plaintiff at his clinic. In its order denying relief, the Appeals Council advises that it considered the letter but found it did not provide a basis for changing the ALJ's decision. When additional evidence is considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial

Moody assigned, and their lack of supportability and consistency with the record as a whole. She noted that over the years, Dr. Moody's progress notes showed few objective findings and no complaints of shoulder pain. At most, his examination findings revealed lumbar spine tenderness, but no abnormalities in either the cervical or lumbar spine, or in Plaintiff's upper and lower extremities. As an example, the ALJ cited medical records showing that when Plaintiff presented with complaints of low back pain on February 27, 2012, Dr. Moody recorded that he had a normal gait and range of motion, with no tenderness to palpation of his cervical or thoracic spine. Plaintiff experienced tenderness to palpation of his lumbar spine, but it remained stable. No abnormalities were observed in Plaintiff's upper and lower extremities, and his range of motion was normal. Dr. Moody recorded the same examination findings, as noted by the ALJ, in April, June, August, October, and December 2012, and throughout 2013 and 2014.[6]

In addition to this evidence, the ALJ observed that Dr. Moody indicated in his medical source statement that Plaintiff had bilateral rotator cuff tears, but there was "no diagnostic evidence supporting this assertion and no mention of rotator cuff problems in Dr. Moody's treatment records." Examination findings consistently documented no abnormalities in Plaintiff's upper extremities, and treatment notes revealed no rotator cuff

---

evidence. *Jones v. Astrue*, 228 F.App'x. 403 (5th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The denial of benefits in this case remains substantially supported by the evidence for the reasons stated herein.

[6]ECF No. 8, pp. 232-33.

problems were reported to, or documented by Dr. Moody. Nor were they clearly indicated in the consultative orthopedic examination ordered by the ALJ.[7]

In a consultative examination conducted in November 2013, Dr. Cleave Johnson noted a decreased range of motion in both of Plaintiff's shoulders and opined that he had reaching limitations to an unspecified degree. But given Plaintiff's medical history, the ALJ reasonably concluded that this was inconsistent with the normal upper extremity range of motion repeatedly documented by Dr. Moody. However, consistent with Dr. Moody's other examination findings, Dr. Johnson found that Plaintiff had: a normal gait; negative bilateral straight leg raises in the sitting position and positive leg raises up to 50 degrees in the supine position; full range of motion with good stability in both knees and no effusion; and, full range of motion in both ankles – all in stark contrast to the standing and walking limitations that Dr. Moody assigned. Dr. Johnson also noted that x-rays taken at the request of the ALJ, confirmed that Plaintiff had rods and screws from previous surgeries in his lumbar spine and left ankle, but revealed good position and alignment in his left ankle.[8]

In addition to Dr. Johnson's examination findings, the ALJ considered Plaintiff's daily activities. On his functional report, Plaintiff reported that he can clean house, drive, shop, do laundry, pick up paper around the yard, fish and hunt. Although he later claimed

---

[7]ECF No. 8, pp. 21-24; 228-84; 287-323; 341-49.

[8]*Id.* at 330-49.

that his daily activities had decreased at the administrative hearing, the ALJ found no persuasive corroborating evidence, and Plaintiff points to none on appeal. Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements, and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x 462 (5th Cir. 2008); *see also Gonzales v. Astrue*, 231 F. App'x 322 (5th Cir. 2007).[9]

In sum, given Plaintiff's daily activities, the examination findings, and the conservative nature of Plaintiff's treatment, the ALJ reasonably concluded that the degree of limitations assigned by Dr. Moody was not supported by the objective evidence, or consistent with the evidence as a whole. Although not required in the face of competing first-hand medical evidence, the ALJ engaged in a sufficiently detailed analysis encompassing the *Newton* factors, and specified her reasons for according Dr. Moody's opinion little weight. Thus, Plaintiff has failed to meet his burden of establishing that the ALJ's final decision fails to comply with proper legal standards, or is unsupported by substantial evidence.

As his second and final point of error, Plaintiff argues the ALJ erred in assigning partial weight to Dr. Johnson's medical source statement. Upon examining Plaintiff, Dr. Johnson opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds

---

[9]ECF No. 8, pp. 124-39.

frequently; stand and walk for 6 hours per day for 45 minutes at a time, with no more than occasional postural limitations, and occasional pushing/pulling. He also opined that Plaintiff had reaching limitations to an unspecified degree, and should avoid moving machinery and pulmonary irritants. The ALJ adopted Dr. Johnson's opinion in all respects, except with regard to pulmonary irritants and reaching limitations, which she found to be vague and inconsistent with the evidence as a whole.[10]

Plaintiff concedes in his memorandum brief that there is no evidentiary basis to support Dr. Johnson's finding that he should avoid exposure to pulmonary irritants, but he maintains that there is an evidentiary basis to support reaching limitations, and argues the ALJ should have recontacted Dr. Johnson for clarification regarding same. In support, Plaintiff points to Dr. Johnson's examination finding that he had a limited range of motion in both shoulders, which he contends the ALJ ignored in rendering her residual functional capacity assessment.

The ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). The ALJ's reasons for rejecting Dr. Johnson's reaching limitations were as follows:

As for reaching, Dr. Johnson checked a box indicating limited reaching in

---

[10]ECF No. 8, pp. 330-40.

all directions (including overhead); however, he did not indicate how often. The claimant's representative argued that Dr. Johnson intended to indicate the claimant can reach in all directions less than occasionally with both upper extremities. The objective evidence does not support this assertion. Regarding the left upper extremity, x-rays of the left shoulder showed only minimal narrowing of the left AC joint. There is a reported history of left axilla skin graft with consistent scars on examination; however, the claimant worked for many years afterward, and there is no evidence of limitation related to the skin graft or evidence showing this condition changed or worsened. At the consultative examination, the claimant allowed 100 degrees left abduction. At his primary care provider appointments, the left upper extremity examinations were normal. Comparing the minimal x-ray findings to Dr. Johnson's examination and the examinations by his primary care provider, the undersigned finds no persuasive evidence of limited left reaching in any direction. With regard to the right shoulder, x-rays show far advanced degenerative changes with healed fracture and retained nail. At Dr. Johnson's examination, the claimant allowed 90 degrees abduction, which is generally consistent with the ability to reach in all directions except overhead. Weighing this evidence against normal examination findings and little, if any, documentation of shoulder complaints in the treatment records, the undersigned finds that the claimant can reach overhead with the right upper extremity no more than occasionally. The undersigned specifically finds no persuasive evidence supporting limitations of right reaching in other directions.[11]

Plaintiff objects to the ALJ's conclusions, but does not rebut her well-reasoned analysis or good cause with substantial evidence to the contrary. He simply maintains that the ALJ should have recontacted Dr. Johnson for clarification, citing both his subjective complaints of shoulder pain and medical source statements suggesting that his reaching abilities were affected.

The decision to recontact a treating source is within the ALJ's discretion. *See* 20

---

[11]ECF No. 8, p. 22.

C.F.R. § 416.920b(c)(1).[12]  Under the regulations, the ALJ may recontact the medical source if the evidence is inconsistent and cannot be resolved, or if the ALJ has insufficient evidence to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1520b(c); 416.920b(c); *Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670 (N.D. Tex. Feb. 13, 2015).  The Court is not persuaded that the evidence was insufficient for the ALJ to properly assess Plaintiff's impairments and residual functional capacity in this case.

     Even if the ALJ erred in failing to recontact Dr. Johnson, Plaintiff cannot establish prejudice by the mere presence of an impairment.  Errors are prejudicial only when they "cast doubt onto the existence of substantial evidence" supporting the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  The ALJ's residual functional capacity assessment limits Plaintiff to occasional overhead reaching with his dominant right arm and occasional pushing and pulling.  Absent substantial evidence that Plaintiff's reduced shoulder motion produced reaching limitations greater than those assigned by the ALJ, or that the proposed jobs were inconsistent with these limitations, Plaintiff fails to demonstrate how his "substantial rights" were affected by the ALJ's failure to recontact

---

[12]To the extent Plaintiff argues the ALJ had a duty to recontact Dr. Johnson, social security regulations were amended to eliminate the recontacting requirement in March 2012.  *See* 77 Fed.Reg. 10651 (Feb. 23, 2012).  The regulation now states that: "We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." 20 C.F.R. § 416.920b(c)(1).

Dr. Johnson.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  No medically acceptable clinical or laboratory diagnostic techniques, from either Dr. Moody or Dr. Johnson, established the existence of impairments which could be reasonably expected to produce the severity of shoulder pain or limitation that Plaintiff alleges.  The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, and there is substantial evidence to support the ALJ's residual functional capacity determination in this case.  20 C.F.R. § 404.1546 (c) (2010).

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the

proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    This the 18th day of July 2016.

                              /s/  Linda R. Anderson
                            UNITED STATES MAGISTRATE JUDGE